UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HUIZINGA,

        Plaintiff,

v.

                             CASE NO. 1:10-CV-223

GENZINK STEEL SUPPLY AND
WELDING CO., et al.,               HON. ROBERT J. JONKER

        Defendants.

_____/

## CORRECTED OPINION and ORDER

    This matter is before the Court on Plaintiff Charles Huizinga's motion for attorney's fees (docket #218) and Defendants Genzink Steel Supply and Welding Co. and Ken Genzink's (collectively "Defendants") motion for attorney's fees (docket #220). Huizinga requests $171,748.45[1] in attorney's fees and $7,918.13 in costs. Defendants seek $332,607 in attorney's fees.

## I. Background

    On March 4, 2010, Huizinga filed a four-count complaint, alleging (1) breach of ERISA fiduciary duty, (2) wrongful discharge under ERISA, (3) violation of the Michigan Whistle-blowers' Protection Act, and (4) violation of Michigan public policy. Defendants filed a counterclaim against Huizinga for breach of fiduciary duty. (*See* docket #16 (amended counterclaim).) On June 4, 2010, Huizinga filed an amended complaint, adding a fifth claim for ERISA retaliation for Defendants' filing of a counterclaim in this case. (Docket #70.) On June 30, 2011, the Court granted summary

---

[1]Huizinga's brief actually requests $151,373.45 in attorney's fees, but the chart in the brief reveals a mathematical error. (Docket #219, Page ID 3887.) The total pro-rated amount of attorney's fees supported in the request is $171,748.45, not $151,373.45. The Court will review the motion as a request for $171,748.45, based on the evidence presented.

judgment to Defendants on Counts Three through Five.  (Docket #121.)  The Court also granted Huizinga's motion for summary judgment with respect to Defendants' counterclaim, finding that "no reasonable fact-finder could conclude that [Huizinga] breached any applicable fiduciary duty he owed as an employee and CFO . . . based on the specific incidents alleged."[2]  (*Id.* at 2579.)  On June 6, 2012, the Court also granted summary judgment in favor of Huizinga on his claim that Ken and Don Genzink breached their Employee Retirement Income Security Act ("ERISA") fiduciary duty to Genzink Steel Supply and Welding Company's 401k plan ("Plan") (Count One).  (Docket #155.)

The Court held a four-day bench trial in May 2013 on the remaining two issues: (1) the appropriate remedy for Defendants' breach of their fiduciary duty (Count One), and (2) whether Huizinga was fired in retaliation for saying that he was going to inform the government of the fees charged by the Plan's administrator, Ron Roti (Count Two).  On August 27, 2013, the Court ordered equitable remedies in Count One, including restitution in the amount of $320,964, and entered judgment in favor of Defendants on Count Two.  (*See* Opinion and Order, docket #216; Judgment, docket #217.)

## II. Legal Standards

ERISA § 502 provides, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  The Supreme Court's decision in *Hardt v.*

---

[2]The Court also granted Huizinga's motion for summary judgment on Defendant Ron Roti's counterclaim for defamation because no reasonable fact-finder could conclude that Huizinga made actionable and unprivileged defamatory statements regarding Defendant Ron Roti.  (Docket #121, Page ID 2578–79.)

*Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), clarified that a fee claimant need not be a

"prevailing party" to be eligible for attorney's fees under ERISA's fee-shifting statute. *Id.* at 254.

Rather, eligibility for attorney's fees merely requires that the claimant achieve "some degree of

success on the merits." *Id.* "Under § 502(g)(2) of ERISA (29 U.S.C. § 1132(g)(2)), the award of

reasonable attorney fees is mandatory where a fiduciary has sued successfully to enforce an

employer's obligation to make contributions to a multi-employer plan. In any other action under

ERISA, however, the statute provides that 'the court in its discretion *may* allow a reasonable

attorney's fee and costs of action to either party.' ERISA § 502(g)(1) (29 U.S.C. § 1132(g)(1))."

*Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996)). There is "no presumption as

to whether attorney fees will be awarded." *Id.* (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287,

1301–02 (6th Cir. 1991)). A five-factor test articulated in *Secretary of Labor v. King*, 775 F.2d 666

(6th Cir. 1985), has become a practical benchmark for whether to award fees. These factors include:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing
> party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an
> award on other persons under similar circumstances; (4) whether the party requesting
> fees sought to confer a common benefit on all participants and beneficiaries of an
> ERISA plan or resolve significant legal questions regarding ERISA; and (5) the
> relative merits of the parties' positions.

*King,* 775 F.2d at 669. "[W]hile the five-factor *King* test is not required [after *Hardt*], it still has

validity in helping courts determine whether or not to award fees to a party that achieves some

degree of success on the merits." *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 521 F. App'x 430, 437

(6th Cir. 2013); *see also Hardt*, 560 U.S. at 255 n.8 (observing that after a court has determined that

a claimant has achieved some success on the merits, a court "may" consider the five-factor test).

"The *King* factors are not statutory, and so should be looked at holistically, with no one factor

3

'necessarily dispositive.'" *Warner v. DSM Pharma Chems. N. Am., Inc.*, 452 F. App'x 677, 681 (6th Cir. 2011) (quoting *Foltice*, 98 F.3d at 937).

The ERISA statute expressly grants courts discretion to award attorney's fees "to either party." 29 U.S.C. § 1132(g)(1). Nonetheless, in most ERISA cases, the nature of the *King* factors makes it less likely that the factors will favor an award to defendants.[3] *See, e.g.*, *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 111 (2d Cir. 2011) ("*Hardt* also does not disturb our observation that "the five factors frequently suggest that attorney's fees should not be charged against ERISA plaintiffs") (citing *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000)); *West v. Greyhound* Corp., 813 F.2d 951, 956 (9th Cir. 1987) (cautioning that the five factors "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs"); *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 719–20 & n.6 (7th Cir. 1981) ("[U]sing the five-factor test, prevailing plaintiffs are more likely to be awarded attorney's fees than prevailing defendants. We recognize . . . that § 1132(g) differs from civil rights attorneys' fees provisions. But we believe that, although civil rights and ERISA plaintiffs may differ, some of the same factors militate against assessing attorneys' fees against plaintiffs in both types of cases.").

### III. Discussion

In this case, both parties undoubtedly achieved a degree of success on ERISA claims. Huizinga won summary judgment on Count One, resulting in equitable relief, including a significant

---

[3]Indeed, this Court is aware of very few cases in which fees were awarded to a defendant. As the cited cases demonstrate, that is because it is hard to envision a case in which the key factors or other factors would weigh in favor of an award to an ERISA defendant. *See* 82 ERISA Practice & Litigation § 11:79 (West 2013) (observing in litigation involving employee benefit plans that it is unusual for a defendant, "whether successful or otherwise," to receive a fee award.); *see also id.* at n.37 (citing a line of cases holding that "a successful defendant will normally not receive an attorney's fee award unless the plaintiff's suit was either frivolous or in bad faith").

amount of restitution. At trial, Defendant Genzink Steel won on Count Two, the ERISA retaliation claim. Therefore, both parties achieved some degree of success on the merits within the meaning of *Hardt*. The Court will therefore consider whether the *King* factors favor an award to either party.

## A.     Defendants' Motion for Attorney's Fees

Defendants Ken Genzink and Genzink Steel seek $332,607 in attorney's fees. With respect to Defendants, the *King* factors weigh against granting an attorney's fees award.

### 1. *Culpability or Bad Faith of the Opposing Party*

Under the first *King* factor, the Court considers "the degree of the opposing party's culpability or bad faith." *King*, 775 F.2d at 669. Here, there is no evidence of culpability or bad faith. Rather, the Court finds that Huizinga pursued his ERISA claims with a deeply held and rational belief that he was terminated because he spoke out about the ERISA Plan. The timing of Huizinga's termination alone was suspicious. The Court ultimately found facts against Huizinga, but the Court did not and does not find that he had bad faith. This factor weighs against an award.

### 2. *Opposing Party's Ability to Satisfy an Award*

The Court next considers the opposing party's ability to satisfy an award. Huizinga argues that the Court should consider the relative economic positions of the parties because the fees requested by Defendants would be an onerous burden, and it was not the intention of the ERISA attorney's fees provision to expose plaintiffs to such risks. In this case, a company that, by its own testimony, is doing very well financially seeks recovery from an individual accountant who maintains part-time employment. The award sought reflects three times Huizinga's annual salary

5

while employed at Genzink Steel and an even larger multiple of his current salary. This factor weighs against an award.

### 3. Deterrent Effect of an Award on Other Persons

This factor is an inquiry into the deterrent effect of an attorney's fees award on other parties, such as plan administrators, employers, or "others similarly situated" to the defendants. *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 531 (6th Cir. 2008). Defendants argue that Huizinga did not make an "innocent mistake," but rather filed and prosecuted a meritless claim for over $750,000 in damages, and this conduct should be deterred. (Docket #221, Page ID 3964.) Huizinga argues that he sought relief for his wrongful discharge claim in good faith, and imposing an award in such circumstances would deter future litigants with valid claims. In support, Huizinga has submitted an affidavit of experienced ERISA attorney Troy Haney. (Docket #231-2, Page ID 4399–4403.) Haney avers that since 1993, he has represented over 1,000 claimants in ERISA cases, including many complex cases litigated at trial. (*Id.* at 4400.) In none of Haney's cases has a court ordered a plaintiff to pay attorney's fees to defense counsel under ERISA's fee-shifting provision. (*Id.* at 4403.) Haney opines that requiring a plan participant who pursues a claim in good faith to pay attorney's fees would have a "dramatic chilling effect" on future claimants. (Docket #231-2, Page ID 4403.)

This is not a case in which an award to the defendants is necessary to "discourag[e] other litigants from relentlessly pursuing groundless claims." *Credit Managers Ass'n of S. Cal. v. Kennesaw Life*, 25 F.3d 743, 748 (9th Cir. 1994). Rather, because the Court does not find culpability or bad faith by Huizinga, the more likely effect of an award in this case would be to discourage good faith ERISA claimants from bringing claims in good faith. Many courts have reflected on the

chilling effect that awarding attorney's fees against an ERISA plaintiff may have on future good faith claimants. *See, e.g.*, *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 111 (2d Cir. 2011) (citing *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000)). This is one concern that may be taken into account in considering the deterrent effect of an award. This factor weighs against an award.

### 4. *Common Benefit or Significant Legal Question*

The fourth factor is whether the party requesting fees sought to confer a common benefit or resolve significant legal ERISA questions. The retaliatory discharge claim did not raise a significant ERISA legal issue, and Defendants sought only to protect themselves in defending it. Defendants do not argue otherwise. This factor weighs against an award.

### 5. *Relative Merits of the Parties' Positions*

Finally, the Court considers the relative merits of the parties' positions. This is not a case in which one party prevailed "cleanly, unequivocally, and absolutely," *First Trust Corp. v. Bryant*, 410 F.3d 842, 854 (2005). The results are mixed: of Huizinga's four original claims, the Court granted summary judgment in favor of Huizinga on one, granted summary judgment in favor of Defendants on two, and ruled in favor of Defendants after a bench trial on the remaining claim. However, regarding Huizinga's breach of fiduciary duty claim (Count One), the evidence was so one-sided that the Court granted summary judgment in favor of Huizinga, and later imposed equitable relief, including significant restitution. That recovery should receive substantial weight in balancing the relative merits of the claims. Regarding Huizinga's wrongful discharge claim that proceeded to trial (Count Two), Huizinga acted on a rational belief that he was terminated because he spoke out about the ERISA Plan. Ultimately, the Court found that Huizinga failed to satisfy his burden of proof, but Huizinga's claim was supported by evidence that made trial essential to

adjudication of the claim.  In contrast, Plaintiff won his ERISA claim on summary judgment.  Nor

can it be said that Huizinga's claims were "utterly devoid of any merit," as suggested by Defendants.

Taken together, this favor weighs against an award.

Altogether, the factors weigh against an attorney's fees award to Defendants.  The Court will

therefore deny Defendants' motion for attorney's fees.

**B.    Huizinga's Motion for Attorney's Fees**

Huizinga seeks $171,748.45 in attorney's fees and $3,253.13 in costs.  Applying the *King*

factors, an award of attorney's fees to Huizinga is appropriate.

*1.  Culpability or Bad Faith of the Opposing Party*

The Court first considers the degree of the opposing party's culpability or bad faith.  In

granting Huizinga's motion for summary judgment, the Court determined that Ken and Don Genzink

had breached their fiduciary duty to the Plan.  The Genzinks' fiduciary duty required them to know

what the Plan was paying in service charges to whom and for what purpose.  As applied to this case,

it required the Genzinks to know what compensation Roti received, both directly and indirectly, from

the Plan.  The Court previously noted that not only did the Genzinks fail to execute their duty,

> it appears they did not really see the compensation question as important at all,
> choosing instead to trust Mr. Roti because, among other things, Mr. Roti already
> functioned as a trusted advisor to the Genzink family and Genzink Steel.  Actually,
> Mr. Roti's work on behalf of the family and the Company made it all the more
> critical in this case for the Genzinks as fiduciaries to understand exactly what
> Mr. Roti was receiving related to his role with the Plan.  The Genzinks failed to
> discharge this fiduciary duty.

(Docket #155, Page ID 3363–64.)  Specifically, the Court found that Don Genzink was a Plan trustee

in name only, with Ken Genzink as the trustee in practice.  (*Id.* at 3364.)  Don Genzink's decisions

were based entirely on the information and recommendations of Roti and Ken Genzink.  (*Id.*)  Don

8

Genzink undertook no independent inquiry of his own regarding issues related to the Plan. (*Id.*) As such, Don Genzink did not act in a manner consistent with his fiduciary duty. (*Id.*)

Ken Genzink testified that he relied almost exclusive on Roti's spreadsheet to select UNIFI as a plan provider. (*Id.*) However, the spreadsheet did not include all the information required for Ken Genzink to make a decision in the best interests of the Plan participants—most saliently, he lacked information on Roti's financial incentives for completing a transaction with each prospective provider. (*Id.* at 3364–65.) Ultimately, the Court found that the Genzinks lacked even a basic understanding of how Roti was compensated or the amount of compensation. (*Id.*) In fact, the Court observed that even with the benefit of additional discovery and briefing from the parties, the Court was still unable at the time of summary judgment to conclusively determine what compensation Roti received for his services. (*Id.* at 3366.) The Genzinks were culpable for breach of their fiduciary duty, so the first factor weighs in favor of Huizinga.

Defendants argue that this factor weighs in their favor because they were not "blameworthy." (Docket #232, Page ID 4410.) For support, Defendants cite *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933 (6th Cir. 1996). In *Foltice*, the court reviewed a district court's denial of attorney's fees to an employee in an ERISA action for pension benefits after granting summary judgment in favor of the employee. *Id.* at 934. The court held that the district court did not abuse its discretion in determining that, after balancing the *King* factors, attorney's fees were inappropriate. *Id.* at 939. Regarding the first *King* factor, the court disagreed with the plaintiff-appellant's argument that the district court erred by considering only "bad faith" and not culpability. *Id.* at 937. Rather, the court stated that the district court considered both culpability and bad faith, and, nonetheless, the court found that any culpability was "relatively slight," thus it did not weigh significantly in favor of

9

attorney's fees.  Thus, *Foltice* does not stand for the proposition that "culpability" and "bad faith" are the same inquiry.

Defendants may be culpable without evincing bad faith.  "Culpable" means "guilty" or "blameworthy" or "[i]nvolving the breach of a duty."  Black's Law Dictionary 407 (8th ed. 2004).  By contrast, the Sixth Circuit has defined "bad faith" as "arbitrary, reckless, indifferent, or intentional disregard of the interest of the person owed a duty."  *Benkert v. Med. Protective Co.*, 842 F.2d 144, 149 (6th Cir. 1988).  The first *King* factor is an inquiry into "the degree of the opposing party's culpability or bad faith," *King*, 775 F.2d at 669, not merely an inquiry into the degree of a party's bad faith.  Defendants' argument is therefore unpersuasive.  The factor weighs in favor of an award.

### 2. Opposing Party's Ability to Satisfy an Award

Defendants do not challenge this factor.  This factor weighs in favor of an award.

### 3. Deterrent Effect of an Award on Other Persons

The third factor is the deterrent effect of an award.  In this case, there is a likelihood that an award of attorney's fees would deter other fiduciaries from breaching their duties to their ERISA Plans by encouraging independent review of service fees and compensation paid by their Plans.[4] This factor therefore weighs in favor of an award.

---

[4]As the Court previously observed in its Opinion and Order following the bench trial (docket #216, Page ID 3852), the issue of undisclosed—or poorly disclosed—fees on 401k plans is emerging as an important problem under ERISA.  Huizinga was correct to shed light on the problem at the Company.  *See generally* Quinn Curtis & Ian Ayres, *Measuring Fiduciary and Investor Losses in 401(k) Plans* (Yale University, Working Paper), *available at* http://www.law.yale.edu/documents/pdf/cbl/CurtisAyres_401kFees(1).pdf.

Defendants argue that there can be no deterrent effect in the absence of culpable conduct. That may be true in some cases. However, because the Court has determined that Defendants are culpable, Defendants' argument is unavailing.

### 4. Common Benefit or Significant Legal Question

Next, the Court asks whether Huizinga sought to confer a common benefit on other participants in the Plan or resolve a significant legal question under ERISA. Defendants concede that Huizinga sought to confer a benefit on other Plan participants. Huizinga did, in fact, confer a benefit on other Plan participants by securing the equitable remedies imposed by this Court. This factor weighs in favor of an award.

### 5. Relative Merits of the Parties' Positions

Finally, the Court considers the relative merits of the parties' positions. Because both parties sought attorney's fees in this case, the same analysis applies to both motions for attorney's fees. As above, the Court finds that this factor weighs against attorney's fees for Defendants and in favor of attorney's fees for Huizinga.

## C.  Amount of Attorney's Fees

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (internal quotation marks omitted). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Once a court has established a lodestar figure, the

11

trial court may consider other factors and adjust the award upward or downward to achieve a reasonable result.  *Geier*, 372 F.3d at 792.  Factors that a court may consider include:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (internal quotation marks omitted).  The party requesting attorney's fees bears the burden of establishing that the number of hours and hourly rate are reasonable.  *Hensley*, 461 U.S. at 437.

### 1. Reasonable Hourly Rate

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  *Geier*, 372 F.3d at 791 (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)).  In *Blum v. Stenson*, 465 U.S. 886 (1984), the United States Supreme Court elaborated:

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Id.* at 895 & n.11.  "When deciding whether a Michigan attorney's rate is reasonable, the Court relies on a combination of its own expertise and judgment, the State Bar of Michigan's Economics of Law Practice Survey, other market surveys if necessary, and the attorney's normal billing rate [which] will often show the market value of the services provided."  *Cmtys. for Equity v. Michigan High*

*School Athletic Ass'n*, no. 1:98-CV-479, 2008 WL 906031, at *10 (W.D. Mich. Mar. 31, 2008) (internal quotation marks and citations omitted).

In this case, Huizinga's counsel seeks an hourly rate of $350 for work through December 2011 and $375 beginning January 2012. Specifically, counsel seeks a pro-rated amount of $117,753.13 based on hours billed at the $350 rate and $50,742.19 at the $375 rate.[5] Counsel argues that these rates are reasonable in light of the market rate in the Grand Rapids area, the complexity of the law, and counsel's experience and expertise. In support, counsel submits an affidavit stating that she has been "engaged primarily in employment law litigation for over eighteen years,"[6] has achieved an "AV" rating by Martindale-Hubbell, and has received various awards and recognitions. (Docket #219-3, Page ID 3919.) Defendants contest the hourly rates as unreasonable.[7]

The rate claimed is consistent with available objective indicators. According to the *2010 Economics of Law Practice* survey (Ex. A, docket #232-1, Page ID 4423–32), in 2010, the top quartile of equity shareholders in Michigan had an hourly billing rate of $350. (*Id.* at 4427.) The

---

[5] Huizinga's counsel also seeks $3,253.13 for work by her law firm's paralegal, billed at an hourly rate of $150. Defendants do not contest the reasonableness of that rate.

[6] Defendants note that counsel's affidavit states in paragraph 8 that she has been in practice in the Grand Rapids area for over 20 years, even though she was not admitted to the Michigan bar until June 12, 1996. Although "in practice" may sometimes suggest "in practice as a licensed attorney," it does not necessarily mean that. Legal assistants, legal secretaries, and other professionals necessarily assist licensed attorneys in the practice of law on behalf of firm clients, and nothing in counsel's affidavit claims over 20 years of experience as a licensed attorney. In fact, counsel's reference elsewhere in the affidavit to partnership in a local law firm and 18 years of experience there in employment litigation (¶4) suggests at least some years of experience in a non-lawyer capacity. In any event, 18 years of experience as a licensed attorney is the most significant point in assessing the reasonableness of the hourly rate claimed.

[7] Counsel also notes that Judge Janet T. Neff approved an hourly rate of $350 for her time in a settled class action lawsuit in *Groth v. Robert Bosch Corp.*, no. 07-cv-962. (Docket #219, Page ID 3879–80.)

13

top quartile of attorneys in practice between 11 and 15 years billed at $265 per hour and the top quartile of attorneys in practice between 16 and 25 years billed at an hourly rate of $300. (*Id.*) The top quartile of Grand Rapids area attorneys had an hourly billing rate of $300, and the top quartile of attorneys representing plaintiffs in employment litigation had an hourly billing rate of $300. In recent years, courts in this district have approved hourly rates ranging from $280 to $440 in ERISA cases. *See Moore v. Menasha Corp.*, no. 1:08-cv-1167, 2011 WL 811150, at *5 (W.D. Mich. Mar. 1, 2011), *vacated and remanded on other grounds by* 476 F. App'x 77 (6th Cir. 2012) (reducing the hourly rate from $400 to $300 for a plaintiff's attorney with 38 years experience); *Cmtys. for Equity*, 2008 WL 906031, at *9–11 (approving rates ranging from $375 to $440 based on experience); *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 976 (W.D. Mich. 2007) (reducing the hourly rate from $350 to $280 for two attorneys with 14 and 25 years' experience, respectively); *Crider v. Highmark Life Ins. Co.*, no. 1:05-cv-660, 2006 WL 6157958, at *5 (W.D. Mich. Nov. 21, 2006) (approving an unopposed $350 hourly rate); *see also Deloach v. Great Atl. & Pac. Tea Co.*, no. 09-14087, 2010 WL 4683919, at *1–2 (E.D. Mich. 2010) (surveying cases awarding experienced ERISA attorneys hourly rates between $350 and $400 but reducing the rate of a less experienced attorney to $325).

In 2013, Huizinga's counsel had at least 16 years of experience, predominantly in the area of employment law, including wrongful termination cases. Moreover, her reputation, as indicated by multiple awards and ratings, easily puts her in a position to command top quartile rates, as measured by the Economic Survey. In addition, ERISA and employment cases such as this one present at least some degree of complexity, permitting a premium rate. In light of this Court's expertise and judgment of the prevailing market rate in the Grand Rapids area, the *2010 Economics*

*of Law Practice* survey, rates approved in other ERISA cases, and counsel's normal billing rate, the Court finds Huizinga's counsel's rates to be reasonable.

### 2. Reasonable Number of Hours

The parties also dispute the reasonable number of hours expended. Huizinga has introduced records documenting a total of 726.5 in attorney hours and 86.75 paralegal hours in this case. In an effort to tailor the fee request to reflect what Huizinga won at trial and on summary judgment, counsel proposes the following method of pro-rating the attorney's fees: (1) work related to the breach of fiduciary duty claim ("BFD") at 100 percent; (2) work related to all claims ("AC") at 75 percent; (3) trial preparation and trial representation work ("TPTR") at 25 percent; and (4) exclusion of work solely related to the wrongful discharge claim ("WD") and other work not performed in furtherance of Huizinga's breach of fiduciary duty claim ("NA"). This reduces the total requested hours to 332.75 attorney hours and 22 paralegal hours.

Defendants make three central arguments in opposition to Huizinga's counsel's proposed number of hours: (1) "AC" claims should be compensated at a 25 percent rate, not 75 percent; (2) several entries are wrongly categorized as "BFD" or are unrecoverable; and (3) "TPTR" hours should be compensated at a rate of less than 25 percent.

### a. All Claims ("AC") Hours

First, Defendants argue that Huizinga should only be compensated at a rate of 25 percent for "AC" hours. Huizinga's counsel argues that a 75 percent rate is appropriate because of the factual overlap in the allegations supporting the claims. The Court agrees that there was significant factual overlap during the pleading and discovery stages, and most work would have been necessary even if the wrongful discharge and other claims did not exist. As such, the Court will use a 75 percent

15

rate for "AC" claims.  However, to the extent that Huizinga includes "AC" hours billed after June 30, 2011, the date on which the Court granted summary judgment to Defendants on Counts Three through Five, the Court will reduce the rate to 50 percent.

### b. Breach of Fiduciary Duty ("BFD") Hours

Defendants also argue that Huizinga wrongly classified unrelated work as "BFD" hours and included unrecoverable hours.  Defendants offer four examples.  First, Defendants argue that Huizinga is not entitled to the 14.5 hours counsel spent on preparation for a December 3, 2010 hearing before Magistrate Judge Brenneman.  (*See* docket #219-4, Page ID 3929 (entries for 11/30/10 and 12/2/10).)  A careful review of the record reveals that those 14.5 hours related to five motions: Huizinga's motion to compel (docket #26), Huizinga's motion to file a second amended complaint (docket #29), Defendant's motion for protective order (docket #32), Huizinga's motion to amend/correct the protective order (docket #38), and Huizinga's motion for extension of time to complete discovery (docket #41).  Huizinga prevailed in part on the motion to compel, but the magistrate judge specifically ordered no costs, (docket # 46, Page ID 506), and Huizinga prevailed on his motion for extension.  Defendants therefore argue that Huizinga's counsel is not entitled to the full 14.5 hours.  Moreover, Defendants argue that none of the motions specifically related to the breach of fiduciary duty claim, so they should not be classified as "BFD" hours.  The Court disagrees.  The unifying theme of the motions heard on December 3 was an ongoing struggle by Huizinga to obtain information related to fees and other operational details of the 401k Plan.  That struggle was resisted by Defendants throughout the litigation—even at summary judgment with the Court.  Under all the circumstances of the case, the "BFD" designation for these hours is a fair characterization in the Court's view.

16

Second, Defendants argue that Huizinga wrongfully requests 3.25 "BFD" hours with respect to a motion for sanctions against Don Genzink, which Huizinga lost. (*See* docket ## 67–69.) Huizinga's motion for sanctions was based on Don Genzink's failure to appear for his deposition. Defendants do not deny that Don Genzink failed to appear. Although the Court ultimately denied the motion for sanctions, under the circumstances Huizinga's motion was a reasonable response and counsel should be compensated for her efforts to move litigation forward. (*See* docket #74.)

Third, Defendants argue that Huizinga's counsel improperly included 4.75 hours of work related to the preparation and submission of an Internal Revenue Service (IRS) complaint that was unrelated to this case. Huizinga's counsel has not offered any explanation for the inclusion of hours expended on the IRS complaint and the Court discerns none. Therefore, the Court will remove 4.75 "BFD" hours.

Fourth, Defendants contend that Huizinga's counsel improperly seeks recovery for 17 "BFD" hours for consultation with Brian Andrew, who is described in Huizinga's counsel's records as a "damage consultant." (*See* docket #219-4, Page ID 3938.) Defendants argue that such time should not be compensated because Huizinga testified under oath in his March 14, 2011 deposition that no experts had been consulted or retained with respect to his ERISA claims, and Huizinga's counsel disclaimed the need for an expert regarding breach of fiduciary duty claims. (*See* docket #193.) Huizinga ultimately presented remedial theories on both trial issues using his own economic expertise and otherwise admitted evidence. Neither side presented outside experts, and the Court found no necessary place for outside experts in this case. But the absence of outside expert testimony does not mean the parties were precluded from using consultants to help develop and test theories of relief. That Huizinga had not consulted such help at the time of his deposition over two

years before trial is neither surprising nor fatal to his recovery of the expenses now. Huizinga was free to consult a damages expert and the Court will not exclude those 17 hours from the fee calculation.

### c. Trial Preparation / Trial Representation ("TPTR") Hours

Finally, Defendants argue that Huizinga's counsel should not be compensated at a rate of 25 percent for trial preparation and representation because the portion of trial spent on the breach of fiduciary duty claim—the sole claim on which Huizinga prevailed—constituted no more than two hours of the four-day bench trial. Huizinga's counsel seeks recovery for 45 "TPTR" hours.

Defendants are correct that the breach of fiduciary duty claim constituted a small percentage of the overall trial time. Indeed, a careful review of the itemized "TPTR" hours reveals that the bulk of the trial preparation work related to the wrongful discharge claim. Nonetheless, Defendants' view that Huizinga's counsel is only entitled to four hours' compensation for trial preparation and representation is too narrow. Naturally, some of counsel's trial preparation work related to both claims and trial generally—including communication with clients, review of deposition testimony, preparation of the final pretrial order, and representation at the final pretrial conference—and at least a significant portion of two additional entries related to the breach of fiduciary duty claim—May 22, 2013 (10.5 hours) and May 25, 2013 (12 hours). Most of the novel legal issues that were the subject of argument at the final pretrial conference and trial involved the breach of fiduciary duty claim. Therefore, a 25 percent rate for "TPTR" hours is reasonable.

Recalculating counsel's hours, the Court finds that the reasonable number of hours expended is 329.75 hours at an hourly rate of $350 and 123.81 hours at a rate of $375, and $3,253.13 in paralegal fees, for a total of $165,094.38 in attorney's fees.

**D.      Costs**

Like attorney's fees, the Court has broad discretion to award costs to parties in ERISA actions who have shown some degree of success on the merits.  *See* 29 U.S.C. § 1132(g)(1); *Hardt*, 130 S. Ct. at 2158.  Huizinga's counsel has moved for itemized costs totaling $7,918.13.  Defendants object to several items.

First, as above, Defendants argue that Huizinga is not entitled to a consulting fee for Brian Andrew.  As previously discussed, Huizinga was free to consult Brian Andrew,  and the Court will include his consulting fee in the costs.

Similarly, Defendants object to Huizinga's recovery of a consulting fee paid to attorney Tom McCarthy.  Huizinga was allowed to consult McCarthy, and the Court will include his consulting fee in the costs.

Next, Defendants argue that Huizinga should not recover process server fees for trial witness Scott Burke, Kathleen Warren, or Neil Van Regenmorter.  The Court agrees that Plaintiff may not collect fees related to Burke and Warren.  Regarding Burke, although a party may sometimes recover fees related to a witness who did not testify, in this case Huizinga has made no showing as to Burke's necessity as a witness.  *See* 10 Wright & Miller et al., Fed. Prac. & Proc. § 2678, at 467–68 (3d ed. 1998) ("Ordinarily, no fee may be taxed for someone who comes to the courthouse but does not testify at the trial, the presumption being that the person was not a necessary witness.  But this is no more than a presumption.").  Regarding Warren, the Court agrees that her testimony was only relevant to the wrongful discharge claim.  As to Van Regenmorter, however, the Court will allow the costs.  Van Regenmorter spoke most directly to the retaliation issues, but he was a broader witness than that.  He confirmed, for example, Huizinga's frustration with getting information on

19

401k fees.  Moreover, Van Regenmorter was the subject of a tug-of-war between the parties. Huizinga obtained a helpful affidavit from him early in the case, but he then appeared unable to testify because of medical problems.  This precipitated motion practice over whether Van Regenmorter's affidavit would be admissible.  There was also at least the suggestion that Defendants were active in encouraging Van Regenmorter to sit on the sidelines if he felt medical issues were a problem.  Ultimately, Van Regenmorter testified and stated that visits made by Defendants to talk about his testimony were upsetting to him.  In short, Van Regenmorter was a witness that was the subject of exhaustive formal and informal litigation tactics and recovery of costs is reasonable.  Therefore, the Court will exclude the costs associated with Burke and Warren, but will include the costs associated with Van Regenmorter.

Finally, Defendants argue that costs designated as "AC" costs should be included at a 25 percent rate like "AC" hours.  As above, the Court will allow "AC" costs at a 75 percent up to June 30, 2011, the date on which the Court granted summary judgment to Defendants on Counts Three through Five, and allow "AC" costs beyond that date at a 50 percent rate.[8]

Huizinga's counsel is entitled to total costs of $7,660.97.

---

[8]Defendants also make three additional points requiring less discussion.  First, they argue that Huizinga is not entitled to process server costs for Ron Roti and Pension Review Services.  The Court disagrees because information regarding Roti's fees was critical to the case overall, even if Roti himself was not subject to liability.  Second, they argue that Huizinga is not entitled to costs related to the December 3, 2010 motion hearing. As above, the Court finds the costs are fairly characterized as "BFD" costs and fully recoverable.  Third, Defendants argue that Huizinga is not entitled to office supplies as they are presumed to be included in the cost of attorney's fees. Defendants do not cite authority to support the proposition that such costs are normally excluded. The office supplies appear trial-related and, absent authority to the contrary, the Court will allow those costs in its discretion.

**IV. CONCLUSION**

For these reasons, the Court will grant Huizinga $165,094.38 in attorney's fees and $7,660.97 in costs, for a total of $172,755.35.  The Court will deny Defendants' motion for attorney's fees.

**ACCORDINGLY, IT IS ORDERED** that Plaintiff's motion for attorney's fees and costs (docket #218) is **GRANTED** in the amount of $172,755.35.

**IT IS FURTHER ORDERED** that Defendants' motion for attorney's fees (docket #220) is **DENIED**.

**IT IS SO ORDERED**.


Dated:  November 25, 2013                         /s/ Robert J. Jonker
                                                ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE